UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| In the matter of the Arbitration between )  | |
| VERMILION COAL COMPANY, ) | Case No. 2:07-cv-02082-MPM-DGB |
|     Petitioner, ) | |
| | ) Judge Michael P. McCuskey |
| v. ) | |
| | ) Magistrate Judge |
| | ) David G. Bernthal |
| BLACK BEAUTY COAL COMPANY ) | |
|     Respondent. ) | |

**BLACK BEAUTY COAL COMPANY'S MEMORANDUM
OF LAW IN SUPPORT OF MOTION TO DISMISS VERMILION'S
COMPLAINT TO VACATE IN PART ARBITRATION AWARD AND
<u>VERMILION'S MOTION TO VACATE IN PART ARBITRATION AWARD</u>**

Comes now the Respondent, Black Beauty Coal Company, LLC ("Black Beauty") and hereby submits its Memorandum of Law in Support of Motion to Dismiss Vermilion's Complaint to Vacate in Part Arbitration Award and Vermilion's Motion to Vacate in part Arbitration Award (collectively referred to as "Vermilion's Complaint").[1]

### I.    FACTUAL AND PROCEDURAL BACKGROUND

Vermilion Coal Company ("Vermilion") and Black Beauty are parties to a Coal Mining Lease ("Lease") governing certain lands in Vermilion County, Illinois and the coal mining rights associated therewith. (Complaint ¶ 6; Answer ¶ 6) Vermilion is lessor and Black Beauty is lessee under the Lease. Catlin Coal Company, Inc. ("Catlin"), Black Beauty's predecessor in interest, assigned its interest in the Lease to Black Beauty in 1999. (Complaint ¶ 11; Answer ¶ 11)

---

[1] The FAA requires a party seeking an order vacating or modifying an arbitration award to file a Motion not a Complaint. 9 U.S.C. § 6. Vermilion filed its Complaint herein on April 24, 2007 (See Doc. 1) and subsequently filed its Motion seeking the same relief requested in its Complaint on April 26, 2007 (see Doc. 7).

On May 12, 2003, Vermilion filed its Verified Complaint for Permanent Injunction and Other Relief in Vermilion County, Illinois. (Complaint, ¶ 14; Answer ¶ 14) Subsequent to Black Beauty's filing of a Motion to Compel Arbitration in accordance with the Lease, the matter was submitted to a three-person arbitration panel ("Arbitration Panel"). (Complaint ¶ 14; Answer ¶ 14)

Black Beauty and Vermilion filed cross motions for summary judgment during the arbitration proceedings. (Complaint, ¶ 17; Answer, ¶ 17) The Arbitration Panel reserved its ruling on the motions for summary judgment and requested extrinsic evidence at the arbitration hearing, which was scheduled to commence November 8, 2004 ("Arbitration Hearing"). *Id.*

Prior to the Arbitration Hearing, Vermilion submitted its Issues for Arbitration, identifying twenty-eight separate items for the Panel's review. In addition to the central issue presented for decision – whether Black Lung Excise Taxes ("BLET") and Abandoned Mine Land Fees ("AMLF") constitute "severance" taxes under the terms of the Lease, Vermilion argued that the Panel should hear 27 additional issues during the Arbitration Hearing, including, but not limited to, the following:

- ➢ Whether Black Beauty breached its express and implied duty of good faith and fair dealing;

- ➢ Whether Black Beauty's conduct constituted "Events of Default" under the Lease, entitling Vermilion to all of the Lease remedies, including termination;

- ➢ Whether Black Beauty's conduct constituted anticipatory or actual repudiation;

- ➢ Whether Black Beauty failed to cure its default, entitling Vermilion to terminate the Lease;

- ➢ Whether Black Beauty committed fraud?

(Vermilion's Complaint, Exhibit D)

The Arbitration Panel subsequently issued its Order Regarding Issues to Be Arbitrated at 11/8/04 Hearing and included within its Order Paragraphs 1 through 18 of Vermilion's Issues for Arbitration, which included the above-identified issues, and Paragraph 27 of Vermilion's Issues for Arbitration only as it related to estoppel. (Order, Complaint, Exhibit F) The Arbitration Panel ordered that "[r]emedies for any breach including accounting, damages, or termination be bifurcated from the [Arbitration Hearing]." *Id.* In other words, the Arbitration Panel ordered that it would determine at the [Arbitration Hearing] whether Black Beauty's conduct constituted an "Event of Default" under the Lease, anticipatory or actual repudiation, fraud, or breach of the duty of good faith and fair dealing. If the Arbitration Panel determined in the affirmative the answer to any of the above-described issues, an additional hearing would be necessary to determine the appropriate remedies.

The Arbitration Panel issued its Decision and Award on March 28, 2005. Within its Decision and Award, the Arbitration Panel interpreted the contract and the provision therein relating to "any sales tax and/or severance" to not include BLET and AMLF. Thus, the Arbitration Panel held that BLET and AMLF are not subject to deduction pursuant to the terms of the Lease in calculating wheelage and royalty payments. However, the Arbitration Panel further found that due to the historical relations among the parties to the Lease, the word "severance" was subject to a good faith difference of views amongst the parties. (Decision and Award, Complaint, Exhibit G, p. 5)

In reviewing the historical relationship of the parties, the Arbitration Panel made the following findings of fact:

➢ Since the inception of the Lease, Black Beauty's predecessor in interest, Catlin, deducted BLET and AMLF;

- Before Black Beauty assumed the Lease from Catlin, Black Beauty required Vermilion to confirm that there was no dispute or default under the Lease;

- Thereafter, Black Beauty continued Catlin's practice of deducting BLET and AMLF from its wheelage and royalty calculations for six years;

- During the six year period, Vermilion refinanced its debt through a new lender, who required that Black Beauty subordinate its interest in the Lease and in the document containing the subordination Vermilion acknowledged that no default existed under the Lease;

- From the beginning of the Lease, Catlin and Black Beauty appropriately submitted 76 reports to Vermilion, as required under Article II, Section 2.3 of the Lease for the reporting of quantity of coal mined and sold;

- After over six years of Black Beauty's performance and Vermilion's acceptance of $3.3 Million in royalty payments, Vermilion objected to the deduction of BLET and AMLF;

- At the time of the Decision and Award, Black Beauty had paid in excess of $5.5 Million in royalty and wheelage payments to Vermilion.

(Decision and Award, Complaint, Exhibit G, p. 6)

The Arbitration Panel concluded based upon the above-described findings of fact that Vermilion had no viable claim for repudiation or fraud under Illinois law, since "neither the conduct of Catlin nor Black Beauty reach[ed] a level or extreme of culpability or malevolence to support or warrant a finding of fraud or any of its components of malice, willfulness and deception as alleged by [Vermilion]." (Decision and Award, Complaint, Exhibit G, p. 7) The Arbitration Panel further concluded that the deduction of the BLET and AMLF from royalty calculations did not constitute a material breach of the Lease nor did the deduction of same constitute an "Event of Default" under the Lease, thereby justifying termination. *Id.* pp. 7-11.

The Decision and Award further advised the parties that "[s]cheduling of any issues for hearing before the Panel relating to bifurcated remedial issues should be coordinated with the case administrator." (Decision and Award, Complaint, Exhibit G, p. 12). Following the issuance of

4

the Decision and Award, the parties reached a mutually agreed computation for the royalty value of previously deducted BLET or AMLF plus interest. Black Beauty paid Vermilion this agreed amount, Three Hundred Seventy-two Thousand Three Hundred Twenty-nine and 44/100 Dollars ($372,329.44), on September 9, 2005 without further involvement from the Arbitration Panel.

Approximately fifteen months subsequent to the issuance of the Decision and Award and ten months subsequent to the parties' agreement with regard to Black Beauty's payment, Vermilion filed with the Arbitration Panel its Motion to Finalize Order and For an Award of Costs and Attorneys Fees. (Vermilion's Complaint, ¶ 21) Black Beauty opposed Vermilion's Motion and filed a Cross Motion for Costs. Vermilion also filed its Notice of Vermilion's Voluntary Dismissal of "Reserved Issues" Pursuant to FRCP 41(a)(1). *Id.*

Subsequent to full briefing on Vermilion's Motion for an Award of Costs and Attorneys Fees and Black Beauty's Cross Motion for Costs, Vermilion requested that the Arbitration Panel's Order contain Findings of Fact and Conclusions of Law. (Vermilion's Complaint, ¶ 35) Black Beauty filed a Motion to Strike Vermilion's Request for Findings of Fact and Conclusions of Law. *Id.*

On January 31, 2007, the Arbitration Panel issued its Final Decision and Award on Bifurcated Remedial Issues. (Complaint, Exhibit H) In the Final Order, the Arbitration Panel: (a) denied Vermilion's Motion for Findings of Fact and Conclusions of Law, (b) granted Vermilion's motion for costs in part; (c) denied Vermilion's motion for attorney's fees; (d) and denied Black Beauty's cross-motion for costs. *Id.*

Vermilion now asserts that the Arbitration Panel's Decision and Award should be vacated "in part" pursuant to 9 USCS § 10(a)(2)-(4) on the basis that the Umpire Arbitrator: (a) "exceeded his powers or so imperfectly executed them that a mutual, final, and definite award

upon the subject matter so submitted was not made; (b) refused to hear evidence material to the controversy; and (c) was evidently partial. (Complaint, ¶ 5)

## II.    STANDARD

In filing a typical 12(b)(6) Motion to Dismiss, Black Beauty would bear the burden of proof to demonstrate that Vermilion's Complaint fails to provide a basis for any claim for relief under any set of facts. *See e.g.*, *Scott v. City of Chicago,* 195 F.3d 950, 951 (7th Cir. 1999); *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 733 (7th Cir. 1986), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.E.2d 676 (1987).  However, the Federal Arbitration Act requires that the application to the Court for an order modifying or vacating an arbitration award be treated and heard in the manner provided by law for the making and hearing of motions.  9 U.S.C. § 6.  Therefore, Vermilion has the burden of proof of demonstrating that the Arbitrators committed an error entitling Vermilion to an order either vacating or modifying the award at issue herein.  *Roche v. Local 32B-32J Service Employees Int'l Union,* 755 F.Supp. 622, 624 (S.D. N.Y. 1991)(moving party bears burden of proof); *Kruse v. Sands Brothers and Co.*, 226 F.Supp.2d 484, 486-87 (S.D. N.Y. 2002)(motion to vacate is not a complaint, requiring proponent of award to show that there are no facts that would justify confirmation).

Vermilion bears a heavy burden. *Cremin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 434 F.Supp.2d 554 (N.D. Ill. 2006)(citing *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004)("It is well established that courts must grant an arbitration panel's decision great deference. A party petitioning a federal court to vacate an arbitral award bears the **[**8]** heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law.")(citations and quotations omitted)).

### III.  ARGUMENT

A. **THE FEDERAL ARBITRATION ACT PROHIBITS THIS COURT FROM GRANTING THE REMEDY VERMILION SEEKS**

Vermilion improperly relies upon Section 10 of the Federal Arbitration Act ("FAA") in its quest for an order vacating the Arbitration Panel's Decision and Award "in part." 9 U.S.C. § 10. Section 10 of the FAA sets forth the grounds for vacating an award while Section 11 sets forth the grounds for modifying an award. *Bruscianelli v. Triemstra*, 2000 U.S. Dist. Lexis 11155 (N.D. Ill. 2000). In *Bruscianelli*, while the petitioners captioned their motion as one to "vacate" the arbitration award, the Court treated their motion as one to "modify," noting that it was clear in the body of the petitioner's memorandum that petitioner really only wanted to "modify" the award. The court thus held that Section 11 of the FAA controlled rather than Section 10. *Id.* Section 11 of the FAA sets forth the following grounds for modification of an award:

> (1) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award;
>
> (2) Where the arbitrators awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted; or
>
> (3) An award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11.

Vermilion does not allege the existence of any of the above-enumerated grounds for modifying the Arbitration Panel's Decision and Award, but rather crafts its own remedy unsupported by the FAA and seeks an order from this Court vacating only those portions of the Arbitration Panel's Decision and Award that were unfavorable to Vermilion. Vermilion cites to Section 10 while seeking the remedy contemplated by Section 11 of the FAA. In citing to Section

10, Vermilion's principal alleged error is that the Umpire Arbitrator's Decision and Award constitutes a "manifest disregard of the law."

The law is well established that if the Arbitration Panel committed any of the enumerated errors of Section 10 of the Federal Arbitration Act, an order vacating the <u>entire</u> Decision and Award could be justified, but not a modification of portions of the Decision and Award, as Vermilion seeks here. *Josephthal & Co., Inc. v. Cruttenden Roth Inc.*, 177 F.Supp.2d 232, (S.D. N.Y. 2001). In *Josephthal & Co.*, the trial court explained as follows:

> The FAA recognizes only petitions to vacate the entire award or petitions to modify an award. The grounds to modify an award, however, are extremely limited and exist only where there is an evident material miscalculation or mistake, the award reaching matters not before the arbitrators or there is an error in form. "Manifest disregard of the law," which the [petitioner] has asserted here, <u>will simply never justify a request to modify an arbitration award</u>…

*Id.*(emphasis added)(internal citations omitted); *See also,* Isenhower v. Morgan Keegan & Co., Inc.*, 311 F.Supp. 2d 1319 (M.D. Ala. 2004)(denying petitioner's motion to modify the arbitration award, because the arguments advanced by the petitioners for modification were simply not grounded in any recognized statutory basis for modification set forth in Section 11 of the FAA).

The FAA limits judicial review of arbitration awards. *Robert W. Baird & Co., Inc. v. Sunamerica Securities, Inc.*, 399 F.Supp.2d 1314 (M.D. Fla. 2005)(citing *Brown v. ITT Consumer Financial Corp.*, 211 F.3d 1217, 1223 (11th Cir. 2000; *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)(courts do not "hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts."). In fact, for decades courts have noted that their function in either vacating or modifying an arbitration award is "severely limited" by the statutory provisions of the FAA. *Amicizia Societa*

*Navegazione v. Chilean Nitrate and Iodine Sales Corp.,* 274 F.2d 805 (2nd Cir. 1960)(citing Judicial Review of Arbitration Awards, 63 Harv.L.Rev. 681 (1950)("The statutory provisions in expressly stating certain grounds for either vacating an award or modifying or correcting it, do not authorize its setting aside on the grounds of erroneous finding of fact or of misinterpretation of law.").

The only grounds upon which this Court can modify the Arbitration Panel's Decision and Award, as Vermilion seeks, are those set forth in Section 11 of the FAA. *Id.*(citing 9 U.S.C. § 11). None of the facts alleged by Vermilion can be construed as providing support for the statutory grounds for modification of the Decision and Award. Accordingly, Vermilion's Complaint must be dismissed.

**B.    VERMILION LACKS GROUNDS FOR AN ORDER VACATING THE ARBITRATION PANEL'S DECISION AND AWARD**

Section 10 of the FAA permits a court to vacate an arbitrator's award when the moving party demonstrates the existence of any of the following grounds for error:

> (1) Where the award was procured by corruption, fraud, or undue means;
> (2) Where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*Id.*

Vermilion alleges that the Umpire Arbitrator exhibited evident partiality, refused to hear evidence pertinent and material to the controversy, and exceeded his powers, or so imperfectly executed them that a mutual, final and definite award was not made. (Complaint, ¶ 5)

1. **Umpire Arbitrator Lambros exhibited impartiality during the course of the arbitration proceedings and acted in accordance with applicable law and the discretion accorded him by the Lease.**

Vermilion's claim that the Umpire Arbitrator (retired Federal Judge Thomas Lambros,) exhibited evident partiality is outrageous. Vermilion on one hand claims that it was the successful party on the "threshold" issue entitling it to back wheelage and royalty payments in the amount of $372,329.44 and costs in the amount of $308,955.01, but, on the other hand, claims that Umpire Arbitrator Lambros was somehow partial in favor of Black Beauty. Not surprisingly, Vermilion fails to pinpoint any conduct on the part of Umpire Arbitrator Lambros that establishes any "**evident**" partiality other than the fact that Vermilion was not successful in its persistent quest to acquire a ruling that Black Beauty acted fraudulently or that Vermilion was entitled to terminate the Lease.

Vermilion must demonstrate *evident* partiality, but wholly fails to make any factual allegations as to any evidence of partiality on the part of Umpire Arbitrator Lambros. Consequently, Vermilion is not entitled to an Order vacating the Decision and Award on the grounds of evident partiality.

2. **Umpire Arbitrator Lambros did not refuse to hear evidence; Vermilion failed to present evidence and, therefore, waived its right to claim error at this juncture.**

In claiming that Umpire Arbitrator Lambros "refused to hear evidence material to the controversy" (Complaint ¶ 5), Vermilion alleges as follows:

10

> The arbitration hearing began on 11/08/04 and concluded on 11/19/04. At the hearing Vermilion was limited to the presentation of evidence on liability issues in accordance with the August 24, 2004, Order. Accordingly, Vermilion presented **little or no** evidence or argument on the bifurcated issues of remedies for any breach including accounting, damages, or termination. Vermilion intended to, and would have, submitted testimony on the bifurcated issues that it had invested more than $20 million in the leased property, and that several hundred older investors relied upon the income derived from royalties for retirement income. However it was not permitted to submit this evidence because of the rush to judgment on bifurcated issues.

(Complaint, ¶ 28) Based upon the plain reading of Vermilion's above-quoted alleged error, it is clear that Vermilion simply failed to present the evidence it now claims the Arbitration Panel should have heard in making its liability determination. Vermilion interpreted the Arbitration Panel's Order setting forth the issues it would hear at the Arbitration Hearing as somehow preventing it from presenting the evidence it now wishes it had presented. *Id.* The August 24, 2004 Order does not "prohibit" the introduction of any evidence, but rather bifurcated the liability and damages portions of the arbitration proceedings. (Order, Complaint, Exhibit H)

Vermilion does not allege that it attempted to offer the evidence it now claims the Arbitration Panel should have heard and was denied the right to do so. Instead, Vermilion alleges that it intended to introduce certain evidence at the bifurcated remedies portion of the arbitration proceedings, but since the Panel determined that there was no material breach of the Lease, Vermilion was denied an opportunity to present said evidence.

Vermilion was fully aware that the Arbitration Panel would determine whether Black Beauty's conduct constituted a material breach during the liability phase of the arbitration proceedings. (Order, Complaint, Exhibit H). In fact, the Arbitration Panel's August 24, 2004 Order is based upon the Issues for Arbitration that Vermilion submitted for review. Vermilion

11

cannot now claim that the Panel committed some type of error for its own failure to introduce evidence it now wishes it would have presented prior to the Panel's determination as to whether or not there was a material breach. Vermilion apparently was over-confident that the Arbitration Panel would find that the deduction of BLET and AMLF constituted a material breach and that Vermilion would then be entitled to present additional evidence.

Vermilion's counsel's failure to present evidence during the liability phase simply cannot be construed as error on the part of the Arbitration Panel.

**3. Umpire Arbitrator Lambros issued a mutual, final and definite award herein.**

Vermilion asserts that Umpire Arbitrator Lambros "imperfectly executed his powers" as demonstrated by his findings that:

(a) the deduction of BLET and AMLF did not constitute an "Event of Default" as defined in the Lease;

(b) Vermilion was not entitled to terminate the Lease;

(c) the Decision and Award is a condition precedent to default/termination of the Lease;

(d) Black Beauty acted in good faith in deducting the BLET and AMLF;

(e) Vermilion was not entitled to payments from Black Beauty due to its predecessor-in-interest's deductions of BLET and AMLF;

(f) Black Beauty's deduction of BLET and AMLF did not constitute a material breach of the Lease;

(g) Black Beauty did not repudiate the Lease; and

(h) Black Beauty did not commit fraud.

(Vermilion's Complaint, ¶ 39).

9 U.S.C. § 10(a)(4) allows a court to vacate an arbitral award if the arbitrators "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the

subject matter submitted was not made." Vacatur under this provision of the FAA is only appropriate "when arbitrators imperfectly execute their powers and make an award that purports to be final, but is in fact not." *See, Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411 (2nd Cir. 1980).

This court is to presume that the Arbitration Panel's Decision and Award is valid and must depart from it "only when the award is proven invalid by clear and convincing evidence" and "must uphold the arbitrator's decision as long as it is within the bounds of the contract language, regardless of whether [the court] might have reached a different result under that language, and it does not break the law." *Cremin*, 434 F. Supp. 2d at 559. (citing *Madison Teachers Inc. v. Madison Metro Sch. Dist.*, 678 N.W.2d 311, 315 (2004); *Nicolet High Sch. Dist. v. Nicolet Educ. Ass'n*, 348 N.W.2d 175, 178 (Wis. 1984)).

An arbitrator's decision may not be rendered invalid due to "mere errors of fact or law, but only when perverse misconstruction or positive misconduct is plainly established, or if there is a manifest disregard of the law, or if the award itself is illegal or violates strong public policy." *Id.* (citing *City of Madison v. Madison Prof'l Police Officers Ass'n*, 425 N.W.2d 8, 10-11 (Wis. 1988).

Under the FAA, "[t]he requirements of finality and definiteness are ones more of form than of substance. They must not be confused with whether the arbitrators' award was correct or even reasonable, since neither error nor clear error nor even gross error is a ground for vacating an award." *IDS Life Ins. Co. v. Royal Alliance Assocs., Inc.*, 266 F.3d 645, 650 (7th Cir. 2001)("If the district judge is satisfied that the arbitrators resolved the entire dispute and can figure out what the resolution is, he must confirm the award." *Id.* at 650-651.

13

Assuming arguendo that the Arbitration Panel committed "gross error" in issuing the Decision and Award,[2] this court would have no authority pursuant to 9 U.S.C. § 10(a)(4) to vacate the award.  *See*, *IDS Life, Ins. Co.*, 266 F.3d at 650.  Vermilion does not allege that the Arbitrators failed to resolve the entire dispute between the parties, but instead contends that Umpire Arbitrator Lambros committed error in failing to rule in their favor on various issues submitted to the Panel.  In sum, Vermilion lacks any statutory or common law support for its argument that Arbitrator Lambros committed any legal error in the issuance of the Decision and Award entitling it to vacatur.

## IV.   CONCLUSION

For all of the foregoing reasons, Vermilion's Complaint must be dismissed in its entirety.

Respectfully submitted,

ZIEMER, STAYMAN, WEITZEL & SHOULDERS, LLP

  /s/ Jean M. Blanton
Jean M. Blanton, ARDC No. 6291404
20 NW First Street, Ninth Floor
P. O. Box 916
Evansville, Indiana   47706-0916
Phone:  (812) 424-7575
Fax:  (812) 421-5089
E-mail: jblanton@zsws.com
Attorneys for Black Beauty Coal Company

---

[2] With respect to the above-cited findings of Umpire Arbitrator Lambros, Black Beauty submits that the Decision and Award is well supported by Illinois case law and authority to which Arbitrator Lambros cited.

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 30th day of July, 2007, I electronically filed the foregoing pleading with the Clerk of Court using the CM/EFC system, which will send notification of such filing to the following:

Deborah G. Cole
DGCole Law
dcole@dgcolelaw.com

John Barr
Barr & Barr
Sej4barr@aol.com

Respectfully submitted,

ZIEMER, STAYMAN, WEITZEL & SHOULDERS, LLP

__/s/ Jean M. Blanton_____
Jean M. Blanton, ARDC No. 6291404
20 NW First Street, Ninth Floor
P. O. Box 916
Evansville, Indiana   47706-0916
Phone:  (812) 424-7575
Fax:  (812) 421-5089
E-mail: jblanton@zsws.com