E-FILED
Monday, 29 October, 2007   02:26:06 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| In the matter of the Arbitration between | ) |
| VERMILION COAL COMPANY, | ) Case No. 2:07-cv-02082-MPM-DGB |
| Petitioner, | ) |
| | ) Judge Michael P. McCuskey |
| v. | ) |
| | ) Magistrate Judge |
| | ) David G. Bernthal |
| BLACK BEAUTY COAL COMPANY | ) |
| Respondent. | ) |

**BLACK BEAUTY COAL COMPANY'S MEMORANDUM
OF LAW IN OPPOSITION TO VERMILION'S
COMPLAINT TO VACATE ARBITRATION AWARD IN PART AND
VERMILION'S MOTION TO VACATE ARBITRATION AWARD IN PART**

Comes now the Respondent, Black Beauty Coal Company, LLC ("Black Beauty") and hereby submits its Memorandum of Law in Opposition to Vermilion's Complaint to Vacate Arbitration Award In Part and Vermilion's Motion to Vacate Arbitration Award In Part.[1]

### I.   STANDARD

Judicial review of arbitration awards is very limited.  *Prostyakov v. Masco Corp.*, 2006 U.S. Dist. LEXIS 71367 (S.D. Ind. 2006); *See also*, *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 706 (7th Cir. 1994)("Judicial review of arbitration awards is tightly limited; perhaps it ought not to be called 'review' at all.").

Arbitration allows parties to select a "nonjudicial forum" to work out their disputes.  The Seventh Circuit does not allow "the disappointed party to bring his dispute into court by the back

---

[1] As discussed in Black Beauty's Memorandum of Law in Support of its Motion to Dismiss, which Black Beauty incorporates herein by reference, Vermilion is not entitled to a vacatur of the Arbitration Panel's Decision and Award "in part."

door, arguing that he is entitled to appellate review of the arbitrators' decision." *Baravati*, 28 F.3d at 706.

The Federal Arbitration Act ("FAA") governs a federal court's power to vacate an arbitration award. *Gingiss International Inc. v. Bormet*, 58 F.3d 328 (7th Cir. 1995). The FAA provides the following limited grounds upon which the court may vacate arbitration awards:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made.

9 U.S.C.A. § 10(a).

This court lacks the power to vacate an arbitration panel's decision when none of the above-listed grounds are present. *Gingiss International*, 58 F.3d at 333. Similarly, if an arbitrator makes an error that does not rise to the level of one of the above four grounds, vacatur of the award is improper. "Factual or legal errors by arbitrators- **even clear or gross errors**- do not authorize courts to annul awards." *Id.(emphasis added)*; *See also*, *Team Scandia, Inc. v. Greco*, 6 F.Supp.2d 795, 801 (S.D. Ind. 1998)("Whether the arbitrator misinterpreted the agreement is beyond the scope of our review.")

In a recent decision, the Seventh Circuit explained a federal court's limited power to review an arbitration award in the following manner:

> When parties agree to arbitrate their disputes they opt out of the court system, and when one of them challenges the resulting arbitration award he perforce does so not on the ground that the arbitrators made a mistake but that they violated the agreement to arbitrate… That is why in the typical arbitration,… the issue for the court is not whether the contract interpretation is incorrect or even wacky but whether the arbitrators had failed the contract at all,… for only then were they exceeding the authority granted them by the contract's arbitration clause.

*Wise v. Wachovia Securities*, 450 F.3d 265, 269 (7th Cir. 2006).

## II.     ARGUMENT

Vermilion contends that former federal Judge and Umpire Arbitrator Lambros' Decision and Award should be vacated pursuant to 9 U.S.C. § 10(a)(3)-(4). In both its initial Motion and in its Complaint to Vacate Arbitration Award in Part, Vermilion also alleges that Umpire Arbitrator Lambros exhibited evident partiality. (Complaint, ¶ 5). Vermilion makes no mention of any alleged partiality of Umpire Arbitrator Lambros in its Memorandum in Support of Vermilion Coal Company's Motion to Vacate Arbitration Award, In Part ("Vermilion's Brief"). Consequently, it appears that Vermilion has now abandoned its spurious claim that Umpire Arbitrator Lambros was somehow partial in favor of Black Beauty in awarding Vermilion a total of $681,284.45, which was comprised of $372,329.44 in back wheelage and royalty payments and $308,955.01 in costs.

### A. Umpire Arbitrator Lambros acted within his authority pursuant to the terms of the Lease and upon the subject matter submitted by the parties.

Vermilion is improperly attempting to disguise its attempts to secure judicial review of Umpire Arbitrator Lambros' Decision and Award by arguing that Umpire Arbitrator Lambros "exceeded his authority." Parties to an arbitration are not permitted to utilize alleged issues of an arbitrator's authority "as a ruse to obtain judicial review of the merits of an arbitral award." *See*,

3

*ARCH Development Corp. v. Bromet*, 2003 U.S. Dist. LEXIS 12300 (N.D. Ill. 2003); The Seventh Circuit has explained this court's role in reviewing whether an arbitral award should be vacated for disregarding the law as follows:

> We should distinguish between two types of cases in which an arbitral award might be challenged for disregarding the law. In one, although the arbitration clause directs the arbitrators to apply the law of a specified state, they decide they do not like that state's law, they like another state's law better and so they will apply that state's law. That would be a case in which the arbitrators had exceeded the authority granted them by the arbitration clause in the parties' contract, a ground for setting aside an arbitration award… Contrast that with a case in which the arbitrators conscientiously attempt to apply [the correct state] law, pursuant to a choice of law provision in the contract, but fail to apply it correctly. The loser has no judicial remedy in that case because it is merely a case of legal error, not of *ultra vires*, and there is no judicial review of arbitration awards for legal error.

*BEM I, LLC v. Anthropologie,* 301 F.3d 548, 554 (7th Cir. 2002). Throughout Vermilion's Brief, Vermilion argues that Umpire Arbitrator Lambros incorrectly applied the law. Clearly, this is not an appropriate ground to support vacatur of an arbitration award. Vermilion does not argue that Judge Lambros exceeded his authority, but instead argues that Judge Lambros "failed to rule in accordance with Illinois law," that Illinois law "requires a finding of breach", that Illinois law requires "a finding that Black Beauty repudiated the agreement", and that Illinois law requires a finding that "Black Beauty's actions constituted fraud."

In pertinent part, Article XXIV of the Lease, which provided the authority by which Umpire Arbitrator Lambros acted, states as follows:

> If there should arise any matters in dispute hereunder, on which Lessor and Lessee cannot finally agree, such matter or matters shall be referred to a board of arbitrators consisting of three (3) disinterested, competent persons, one selected by Lessor and one by Lessee, as hereinafter provided, and the two thus selected shall

4

> select the third, who shall have the power of an umpire and be known as umpire-arbitrator. The decision and award of such arbitrators, or any two of them, or, in case of disagreement among all the arbitrators, of the third or umpire-arbitrator, shall be conclusive and binding upon Lessor and Lessee and promptly complied with.
> …
> In arriving at a decision and award, said arbitrators shall be bound by any relevant state and federal law applicable to the substantive issue or issues so submitted for arbitration, and shall make such decision and award in writing, and deliver a copy to both Lessor and Lessee…

(Vermilion's Brief, Exhibit A).

There can be no question that Arbitrator Lambros interpreted the Lease. Vermilion notes that it received a favorable interpretation of a clause of the Lease that allowed for the deductibility of severance taxes. Specifically, in his Decision and Award, Arbitrator Lambros made the following finding:

> …"BLET and AMLF are not 'severance' taxes, using the plain and ordinary meaning of the word, but are federal special purpose taxes not deductible within terms of this Lease.

(Vermilion's Brief, Exhibit B, Decision and Award, p. 5) However, Arbitrator Lambros also interpreted the Lease provisions concerning remedies, the parties' duty to arbitrate, and the express duty of good faith and fair dealing to require a finding under Illinois law that there was no material breach, fraud, or repudiation under the facts presented to the Arbitration Panel. Specifically, Arbitrator Lambros made the following findings with respect to these issues:

> While we are dealing with the question here and **interpreting** the lease, none of the facts, actions or events constitutes fraud nor a repudiation based on applicable Illinois law nor do Black Beauty or Catlin's deduction of BLET and AMLF constitute such a breach as to constitute a repudiation of the lease.
> …
> Illinois law with its own cases and their embracing noteworthy authorities including the Restatement compels the analysis here

5

> rejecting the claim of repudiation as that evidence having been viewed in its entirety has not established that the breach was so central to the parties' agreement that it defeated the essential purpose of the lease contract.
> …

(Vermilion's Brief, Exhibit B, Decision and Award, pp. 7, 9)(emphasis added)).

This court need not devote any time determining whether or not it agrees or disagrees with Umpire Arbitrator Lambros' interpretation of the parties' Lease. Once a federal court is satisfied that an arbitrator interpreted the contract, judicial review is at an end. *Hill v. Norfolk & W. Ry.*, 814 F.2d 1192, 1195 (7th Cir. 1987); *See also*, *Chameleon Dental Prods., Inc. v. Jackson*, 925 F.2d 223, 225 (7th Cir. 1991)("the chances for a successful appeal of an arbitration award are not particularly good. When asked to set aside an arbitration award, our review is restricted to determining whether the arbitrator actually interpreted the contract.")

Vermilion asserts that Section 22.1 of the Lease permitted Vermilion to terminate the Lease in light of Umpire Arbitrator Lambros' finding that AMLF and BLET were not "severance" taxes. Umpire Arbitrator Lambros made the following findings with respect to Section 22.1 of the Lease:

> Vermilion ties into the repudiation claim Sec. 22.1 of the lease relating to Notice of Default and seeks to achieve a lease termination based on a notice of default to Black Beauty. Additionally Vermilion seeks a default determination for Black Beauty's failing to agree and accept Vermilion's interpretation of the lease word "severance."
> …
> The dispute over the meaning of the word "severance" as a deduction should have gone to arbitration for clarification before the notice was sent out. The parties had a bona fide dispute and this lease should not be construed to permit the party who loses a good faith dispute to lose all. It has already been determined that a repudiation did not occur. Accordingly, it was not an event of default, and the notice and demand was untimely. It can become timely if the lessee fails to comply with this arbitration decision.

(Vermilion's Brief, Exhibit B, Decision and Award, pp.10, 11).

The Lease contains an express duty of good faith and fair dealing provision:

> "It is the intention of both parties to successfully promote and operate an underground coal mine to remove and sell the coal encompassed in this agreement. To that end, both parties agree to cooperate with each other and that each owes to the other a duty of good faith dealing."

(Vermilion's Brief, p. 17; Exhibit A, Lease, p. 24).

Arbitrator Lambros construed this express duty of good faith and fair dealing to require the parties to arbitrate their disputes prior to seeking a termination. Specifically, Arbitrator Lambros found as follows:

> …[T]he use of the word "severance" against the back drop of the historical relations among the parties, renders it reasonably possible of misunderstanding, giving to the parties a basis for a **good faith difference of views** as to whether the word "severance" applied to the federal taxes at issue here.
> …
> While Vermilion steadfastly seeks to block out any consideration of good faith misunderstanding of the contract as a relevant consideration of the claims of breach, fraud or repudiation, Vermilion, nonetheless, has forcibly thrust the issue of faithfulness into all of the liability issues by its own complaint allegations and arbitration brief arguments.
> …
> Despite … the lessor's persistence in achieving a repudiation of the lease, the evidence overwhelmingly shows too much has gone into this relationship between the lessor and lessee and the lease to allow the sounding of the death knell for this lease. The facts do not support it. The law does not allow it.
> …
> As the parties so prudently provided for an arbitration process to resolve disputes of the kind that spawned the problem here, it now has been resolved by the contract interpretation here and the lease should proceed in furtherance of its objectives subject, of course, to a consideration of monetary compensation.

(Vermilion's Brief, Exhibit B, Decision and Award, pp. 7, 9(emphasis added)).

In sum, Umpire Arbitrator Lambros construed the Lease to require the parties' to arbitrate good faith disputes, such as the parties' good faith dispute as to the meaning of the term "severance", prior to seeking a termination of the Lease. *Id.* The provisions of the Lease requiring the parties to arbitrate any dispute and requiring both parties to "cooperate with each other" to "successfully promote and operate an underground coal mine" support Umpire Arbitrator Lambros' interpretation.

The question before this court on a motion to vacate an arbitration award on the grounds that the arbitrators exceeded their authority is not whether the arbitrators' interpretation is legally accurate. *Prostyakov*, 2006 U.S. Dist. Lexis at p. 21.; *Wackenhut Corp. v. Local 1, Service Employees International Union*, 2006 U.S. Dist. Lexis 53883 (N.D. Ill. 2006)("So long as the arbitrator interprets the contract, enforcement of his award does not depend on whether a court later thinks the arbitrator's interpretation is correct."); *Hill v. Norfolk*, 814 F.2d at 1195; *Butler Manufacturing Co. v. USW*, 336 F.3d 629, (7th Cir. 2003)( holding that if an arbitrator does not exceed her delegated authority, the award will be enforced, even if the arbitrator's award contains a serious error of law.)[2]

Vermilion is inviting this court to review Umpire Arbitrator Lambros' Decision and Award for legal error, which is clearly impermissible. Courts within this Circuit often quote the following passage concerning their lack of authority to review an arbitration decision for legal error:

> "Courts often say, with respect to arbitrators' role in interpreting contracts, that error is not a ground of judicial review. The

---

[2] Obviously, Black Beauty continues to believe that Arbitrator Lambros was legally incorrect in his construction of the Lease's use of the term "severance." Unlike Vermilion, it understands it has no appeal rights with respect to Arbitrator Lambros' interpretation.

> question for decision by a federal court asked to set aside an arbitration award… is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract."

*George Watts & Sons v. Tiffany and Co.*, 248 F.3d 577, 579 (7th Cir. 2001)(quoting *Hill,* 814 F.2d at 1194-5); See also, *BEM I, LLC*, 301 F.3d at 554, 556 (holding "there is no judicial review of arbitration awards for legal error" and stating that "it is of no moment whether the arbitrators got Illinois law right… or very wrong."); *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)(courts do not "hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.").

Even if this court were permitted to review Umpire Arbitrator Lambros' Decision and Award for legal error, this is not a case wherein the Umpire Arbitrator "flouted" the law or the contract of the parties, as asserted by Vermilion. Umpire Arbitrator Lambros interpreted the contract under Illinois law.

None of the facts alleged by Vermilion provide support for vacatur of the Decision and Award. Accordingly, Vermilion's Motion to Vacate Arbitration Award in Part must be denied.

### B.  UMPIRE ARBITRATOR LAMBROS DID NOT REFUSE TO HEAR ANY EVIDENCE

Vermilion continues to argue that Umpire Arbitrator "refused to hear evidence material to the controversy." In reality, Vermilion's counsel failed to present evidence that Vermilion now wishes it would have offered.

In essence, Vermilion argues that it intended to introduce certain evidence at the bifurcated remedies portion of the arbitration proceedings, but since the Panel determined that there was no material breach of the Lease, Vermilion was denied an opportunity to present said

9

evidence. In support of its argument, Vermilion misconstrues the Arbitration Panel's Order which bifurcated the damages and liability portions of the Arbitration Hearing. It is a basic tenet that where there is a finding of no liability in a bifurcated hearing on "material breach," the damages hearing is rendered unnecessary.

In claiming that Umpire Arbitrator Lambros "refused to hear evidence material to the controversy" (Complaint ¶ 5), Vermilion alleges as follows:

> The arbitration hearing began on 11/08/04 and concluded on 11/19/04. At the hearing Vermilion was limited to the presentation of evidence on liability issues in accordance with the August 24, 2004, Order. Accordingly, Vermilion presented **little or no** evidence or argument on the bifurcated issues of remedies for any breach including accounting, damages, or termination. Vermilion intended to, and would have, submitted testimony on the bifurcated issues that it had invested more than $20 million in the leased property, and that several hundred older investors relied upon the income derived from royalties for retirement income. However it was not permitted to submit this evidence because of the rush to judgment on bifurcated issues.

(Complaint, ¶ 28) Based upon the plain reading of Vermilion's above-quoted alleged error, it is clear that Vermilion simply failed to present the evidence it now claims the Arbitration Panel should have heard in making its liability determination. In hindsight, Vermilion now interprets the Arbitration Panel's Order setting forth the issues it would hear at the Arbitration Hearing as somehow preventing it from presenting the evidence it now wishes it had presented. *Id.* The August 24, 2004 Order does not "prohibit" the introduction of any evidence, but rather bifurcated the liability and damages portions of the arbitration proceedings. (Order, Complaint, Exhibit H)

Vermilion was fully aware that the Arbitration Panel would determine whether Black Beauty's conduct constituted a material breach during the liability phase of the arbitration proceedings. (Order, Complaint, Exhibit H). In fact, the Arbitration Panel's August 24, 2004

10

Order is based upon the Issues for Arbitration that Vermilion submitted for review. Vermilion's failure to present evidence during the liability phase is not error on the part of the Arbitration Panel.[3]

## IV. CONCLUSION

For all of the foregoing reasons, Vermilion's Motion to Vacate Arbitration Award In Part should be denied.

Respectfully submitted,

ZIEMER, STAYMAN, WEITZEL & SHOULDERS, LLP

/s/ Jean M. Blanton
Jean M. Blanton, ARDC No. 6291404
20 NW First Street, Ninth Floor
P. O. Box 916
Evansville, Indiana  47706-0916
Phone:  (812) 424-7575
Fax:  (812) 421-5089
E-mail: jblanton@zsws.com
Attorneys for Black Beauty Coal Company

---

[3] Vermilion also argues that Umpire Arbitrator committed error prejudicial to Vermilion when he denied Vermilion's Motion for Findings of Fact and Conclusions of Law, which Vermilion filed subsequent to the issuance of Umpire Arbitrator Lambros' Decision and Award. The Arbitration issued a written decision, as required by the Lease. The written decision was quite detailed and provided the Umpire Arbitrator's reasoning in support of his determination. The Lease did not require the Arbitration Panel to issue findings of fact and conclusions of law and any refusal of the Arbitration Panel to do so upon the request of a party is not grounds to support vacatur of the Arbitration Panel's Decision and Award.

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 29th day of October, 2007, I electronically filed the foregoing pleading with the Clerk of Court using the CM/EFC system, which will send notification of such filing to the following:

Deborah G. Cole
DGCole Law
dcole@dgcolelaw.com

John Barr
Barr & Barr
Sej4barr@aol.com

Respectfully submitted,

ZIEMER, STAYMAN, WEITZEL & SHOULDERS, LLP

/s/ Jean M. Blanton
Jean M. Blanton, ARDC No. 6291404
20 NW First Street, Ninth Floor
P. O. Box 916
Evansville, Indiana 47706-0916
Phone: (812) 424-7575
Fax: (812) 421-5089
E-mail: jblanton@zsws.com