**E-FILED**
Monday, 03 March, 2008  10:59:17 AM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | |
|---|---|
| In the matter of the Arbitration between ) | |
| VERMILION COAL COMPANY, ) | Case No. 2:07-cv-02082 |
| ) | |
| Petitioner, ) | Judge Michael P. McCuskey |
| ) | |
| v.   ) | Magistrate Judge |
| ) | David G. Bernthal |
| BLACK BEAUTY COAL COMPANY, ) | |
| ) | |
| Respondent.   ) | |

**VERMILION COAL COMPANY'S RESPONSE TO**
**BLACK BEAUTY COAL COMPANY'S OBJECTION**
**TO MAGISTRATE BERNTHAL'S REPORT**
**AND RECOMMENDATION DATED JANUARY 30, 2008**

On February 8, 2008, Black Beauty filed its "Objection to Magistrate Bernthal's Report

and Recommendation Dated January 20[sic], 2008."  The Objection reiterates Black Beauty's

contention that the Federal Arbitration Act ("FAA") does not permit a federal district court to

vacate an arbitration award "in part."  In other words, Black Beauty argues the FAA authorizes a

federal court only to (1) vacate an award in its entirety, pursuant to Section 10, or (2) modify an

award pursuant to Section 11.

A.  Magistrate Bernthal Correctly Found that Arbitration Awards can be Vacated In Part

Magistrate Bernthal, in a well-reasoned "Report and Recommendation," rejected Black

Beauty's position, finding that the law allows an arbitration decision to be vacated in part.  As

demonstrated by Vermilion in the cases cited in its Response to Black Beauty's Motion to

Dismiss[1], the Magistrate's Report and Recommendation is supported by case law and is consistent with the legal policies which underlie and promote the arbitration process.

Moreover, in a very recent case, *Comedy Club, Inc., v. Improv West Assoc.,* ___ F.3d ___ , 2007 WL 4754350 (9th Cir. Sept. 7, 2007), the Ninth Circuit agreed with the Magistrate's conclusion, namely, that Section 10 of the FAA allows a court to vacate in part an arbitration award.  In *Comedy Club*, the Ninth Circuit held:

> If an arbitrator exceeded the scope of his authority in issuing an award, and that award is divisible, we may vacate part of the award and leave the remainder in force.
>
> 2007 WL 4754350 WL at *7.

For this reason, the *Comedy Club* Court vacated the arbitration award "insofar as it enjoins any of CCI's Affiliates who are not connected to the principals of CCI…."

---

[1] . See, *CUNA Mut. Ins. Soc'y v. Office & Prof'l Emples. Int'l Union, Local 39,* 443 F.3d 556 (7th Cir. 2006) (CUNA brought an action in the district court to **vacate part of an arbitration award** in which the arbitrator determined that CUNA had violated its collective bargaining agreement with the union); *In re Allegheny Health, Educ. & Research Found.  v. Nat'l Union AFSCME, AFL-CIO Dist. 1199C*, 383 F.3d 169 (3d Cir. 2004) ( reversing  dismissal of the union's claim to enforce  arbitration award with regard to the prospective sick leave obligation and the dismissal of Tenet's (Allegheny's successor) suit to vacate that part of the arbitration award and remanding with instructions to the bankruptcy court to enter judgment in favor of the union on its claim to enforce the award of prospective benefits and against Tenet on its claim to vacate the award of prospective benefits).

*HMC Management Corp. v. Carpenters Dist. Council,* 750 F.2d 1302 (5ᵗʰ Cir. 1985), is

another case where a Court of Appeals refused to vacate an entire arbitration award, finding that

the appropriate remedy was not to vacate *in toto,* but rather to remand to the arbitrator.

Significantly, the Fifth Circuit in *HMC* noted that vacating the award *in toto* would "punish the

[appellant] for the arbitrator's failure."  750 F.2d at 1305.

Black Beauty cites a single court of appeals decision in support of its contrary position:

*Bob Schultz Motors, Inc. v. Kawasaki Motors Corp.*, U.S.A., 334 F.3d 721, 725 (8ᵗʰ Cir. 2003) (a

partial vacatur is not authorized under the FAA).  However, the *Bob Schultz* Court cited only a

single case as authority for this holding, *Legion Ins. Co. v. VCW, Inc.*, 198 F.3d 718, 721 (8ᵗʰ Cir.

1999).  The Eighth Circuit's holding in *Legion Ins.* was actually more limited than is portrayed

by Black Beauty and *Bob Schultz.*  The *Legion Ins.* Court wrote:

> Our review of the initial arbitration order convinces us that the arbitration panel intended
>
> the award of premiums to be indivisible from the award on the letters of credit. *Whatever*
>
> *the rule may be under different circumstances,* when a panel by the language it uses
>
> makes clear that it intends its award to be indivisible, the district court must take the
>
> award as it finds it and either vacate the entire award using section 10 or modify the
>
> award using section 11. 198 F.3d at 721.  Emphasis supplied.

*Bob Schultz* thus erroneously relied on *Legion Ins.*, where the Award at issue was expressly

made "indivisible" by the arbitrator.[2]  That is not the situation here.

---

[2] Another case which rejected *Legion Ins.*, for the same reason, as authority for the proposition

that an Award cannot be vacated in part is *Lummus Global Amazonas, S.A. v. Aguaytia Energy*

*Del Peru*, S.R. LTDA., 256 F.Supp.2d 594, 655 (S.D.Tx. 2002)("The panel in this case did not

state or otherwise indicate that it intended its award to be indivisible.").

Black Beauty's attempt to distinguish *CUNA Mut. Ins. Soc'y v. Office & Prof'l Emples. Int'l Union, Local 39,* 443 F.3d 556 (7th Cir. 2006), a case relied on by the Magistrate, is unpersuasive. According to Black Beauty, the Seventh Circuit's disposition of that case, in which CUNA sought review of only part of an arbitral award, should be given no weight because "there was no [sic] absolutely no discussion or analysis as to whether the court had authority to grant partial vacatur." (BB Objec. at 5.) This contention suggests, incredibly, that the Seventh Circuit does not understand the terms of Section 10 of the FAA.

Black Beauty also dismisses the precedential value of another Seventh Circuit case relied on by the Magistrate, *Carpenter Local No. 1027, Mill Cabinet-Indus. Div. v. Lee Lumber & Bldg. Material Corp.*, 2 F.3d 796, 800 (7th Cir. 1993), arguing "the Court had trouble deciphering the arguments the appellee did put forth…." (BB Objec. at 5.) Although the employer in *Carpenter* may have failed to argue that the Court lacked the authority to vacate an award in part, again it is farfetched to conclude from that premise that the Seventh Circuit did not comprehend the lawful scope of its powers under Section 10 of the FAA.

Finding that Section 10 of the FAA allows courts to vacate only *in toto* and not in part would be contrary to the policy reasons which encourage private arbitration agreements. Arbitration is "a private system of justice offering benefits of reduced delay and expense. *Eljer Mfg, Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1254 (7th Cir. 1994). See also, *Hoffman v. Cargill Inc.,* 236 F.3d 458, 462 (8th Cir. 2001). Where an arbitration award is easily divisible, vacating in part, where appropriate, is consistent with the parties' goals in entering an agreement to arbitrate any future disputes.

B.  The Award Is Divisible

The Magistrate's Report and Recommendation states, in part: "[N]either party has addressed the issue of whether the purportedly valid and invalid parts of the Decision and Award can be separated or whether the arbitration panel indicated that the Decision and Award must be treated as an indivisible whole." (p. 7)  Black Beauty contends in its Motion to Dismiss and in its Objection that there is no basis for a vacatur, in part, thereby implying that the Decision and Award are not divisible.  As explained below, Vermilion submits that the Decision and Award in this case is easily divisible and that the Panel below gave no indication that its Decision and Award must be treated as an indivisible whole.

Courts which have vacated an arbitration award "in part" generally leave untouched the arbitrators' liability finding and vacate all or part of the remedy.  In *Comedy Club, supra*, for example, the Ninth Circuit affirmed the Panel's findings on the merits of the dispute while it vacated certain injunctive relief the Panel had ordered.  2007 WL 4754350 at *12.  Similarly, in *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378 (11th Cir. 1988), the Eleventh Circuit affirmed the arbitrator's finding of liability and award of compensatory damages while vacating the award of punitive damages.  And in *Paper, Allied-Industrial, Chem. & Energy Workers Int'l Union v. S.D. Warren Co., 2004 WL 1484995 (June 4, 2004 D. Me.),* the court stated:

> In this case, the arbitrator bifurcated the issue of just cause and remedy and the only challenge to his award concerns the manner in which he decided the issue of reinstatement. Accordingly, it would be appropriate for the Court to vacate the award in part and remand the reinstatement question for further arbitration.  2004 WL 1484995 at *13.

This case is presented in a similarly "divisible" posture.  Here, the Panel bifurcated the issues of liability and damages/remedies.[3]  Ump. Lambros' found that Black Beauty violated the Lease by failing to properly compute the royalties due Vermilion.  This finding is not at issue here, because this finding was within the authority granted to the arbitration panel by the

---

[3] See, August 24, 2004 Panel Order, attached as Exh. "A".  Additionally, in the 03/28/2005 Decision and Award (the "Interim Decision"), Umpire Lambros acknowledges that the bifurcated remedial issues were not resolved at the November 2004  hearing despite the fact that his ruling denied Vermilion its  bargained for remedy of termination for Black Beauty's breach in the payment of  royalties due to Vermilion in accordance with the Lease. (See, Exh. "G" to Vermilion's Complaint to Vacate, In Part, Arbitration Award ("Vermilion's Complaint").)  Again, in the first paragraph of Section II of his Final Decision and Award on Bifurcated Remedial Issues ("Final Decision"), Ump. Lambros stated that the Interim Decision memorialized the "determination of the threshold liability issues" and that "all remaining remedial issues were bifurcated from the November 8, 2004 hearing and were to be decided by the Panel at a later date."  (See, Exh. "H" to Vermilion's Complaint.)  In January of 2007, the Final Decision was rendered by the Panel. In the second paragraph of Section II of the Final Decision, Ump. Lambros summarily states that following Vermilion's voluntary dismissal of certain liability issues previously reserved by the Panel, "the only remaining issues to be determined by the Panel relate to respective motions for costs filed by Vermilion and Black Beauty Coal Company ("Black Beauty").  Thus, Ump. Lambros improperly denied Vermilion the remedy of termination in his ruling made after the November 8th "liability" hearing, then made the quantum leap from *threshold* liability issues to costs in contradiction of the Panel's order and his own rulings.

agreement, and is divisible.[4]   At issue is the fact that after finding Black Beauty had breached

the Lease, Ump. Lambros reasoned that Black Beauty's actions constituted a "breach for

monetary compensation" which "did not constitute a total breach" and did not rise to the level of

breach of contract, fraud, or anticipatory repudiation.  Ump. Lambros denied Vermilion its

bargained for remedy of termination, ignoring the Panel's own order on bifurcation, the express

language of the Lease, Vermilion's notice of default, and Black Beauty's refusal to cure its

default.[5]  (See, Lease attached as Exh. "A" to Vermilion's Complaint.)  Instead, Ump. Lambros

exceeded his authority by imposing his personal notions of justice, invoking various legal and

equitable notions of "good faith" default, total versus partial breach, and "egregious" versus

"mistaken" breach, in violation of applicable Illinois law and the express language of the Lease.[6]

---

[4] Several months after the Interim Decision, Black Beauty paid Vermilion amounts owed for its

improper deduction of certain taxes and fees in its calculation of royalties owed to Vermilion in

accordance with the Panel's Interim Decision.

[5] Section 22.1 of the Lease, titled "*Default: Termination by Lessor,*" states that "[i]f default shall

be made in the due and punctual payment of ***any*** rent, ***royalty or any part thereof*"** the agreement

"***shall terminate*"** upon the date specified in Vermilion's notice of default given in accordance

with the Agreement.  (Emphasis supplied.) (See, Notice of Default, attached as Exh. "B").

[6] Both Vermilion and Black Beauty agreed to be bound by the Federal Rules of Procedure and

the Federal Arbitration Act. The Lease agreement contains not only a choice of law provision

making Illinois law applicable, (Article XXVI), but, more importantly, the arbitration provision

in the agreement (Article XXIV), *from which the arbitrators derive their powers*, plainly states

that "[i]n arriving at a decision and award, said arbitrators ***shall be bound by any relevant state***

***and federal law applicable to the substantive issue or issues*** so submitted for arbitration…".

7

The Award is also naturally divisible. Both parties, and the arbitrators, acknowledged that

the threshold issue in the arbitration was whether Black Beauty's deduction of Black Lung

Excise Taxes ("BLET") and Abandoned Mine Land Fees ("AMLF") as "severance" taxes in its

calculation of royalties owed to Vermilion violated the terms of the Lease.[7] All of the remaining

issues are causally related to this finding, and would have been moot if Black Beauty's

deductions had been found to be correct. Instead, Ump. Lambros ruled that Black Beauty

wrongfully deducted BLET and AMLF from the calculation of royalties then, contrary to his

own orders, the express language of the Lease, and applicable substantive Illinois law, he denied

Vermilion the full extent of remedies sufficient to compensate for the damages caused by Black

Beauty's unlawful actions.[8]

---

(Emphasis supplied.)  Thus, in this case there is both a choice of law and a contract provision

contained within the arbitration clause which specifies the scope of the arbitrators' remedial

powers. Vermilion submits that Ump. Lambros exceeded his authority, a basis for vacatur under

Section 10(a) (4) of the FAA, by failing to apply the relevant substantive Illinois law.

[7] Motions for summary judgment were initially filed by Vermilion and Black Beauty on the

threshold issue.  Ump. Lambros' Interim Decision and Award and other orders recognized that

the determination of whether BLET and AMLF were properly deducted as "severance" taxes

was the threshold issue in the arbitration.

[8] The incorrect computation of royalties begun by a predecessor lessee was continued by Black

Beauty. But for its own later willful acts to cover up its conduct and defy Vermilion's rightful

demands, Vermilion's additional causes of action would not exist. Black Beauty "bet the farm"

on its ability to frustrate Vermilion's demands for the benefit of its bargain, and lost.

In conclusion, whether viewed in terms of liability and remedies, causality, timing, or Ump. Lambros' scheduling order, the Award is divisible. The Court can affirm Ump. Lambros' findings and conclusion of liability on the "threshold" issue of Black Beauty's "monetary" breach in the payment of royalties and vacate those portions of the Interim and Final Decision and Award relating to the remaining liability issues and remedies.[9] Such a ruling by this Court would be consistent with the Lease, the Panel's own orders, and decisions regarding bifurcation of remedies and applicable procedural and substantive law.  Moreover, principles of judicial economy should strongly favor separate consideration of the threshold issue of liability from matters of remedies and the consequences of Black Beauty's refusal to comply with Vermilion's demands.

WHEREFORE, Vermilion respectfully requests that this Court overrule Black Beauty Coal Company's Objection to Magistrate Bernthal's Report and Recommendation Dated January 30, 2008.

Respectfully Submitted,

/s/ Deborah G. Cole
One of the Attorneys for Vermilion Coal Company
ARDC No.:  6184806

Deborah G. Cole, ARDC No. 6184806       John Barr    ARDC No. 00120308
DGCole Law                              Barr & Barr
1400 North LaSalle Street               1301 East Mound Road, Suite 350
Chicago, IL 60610                       Decatur, IL 62525-0050
Tel: (312) 751-0272                     Tel:  (217) 875-5311
dcole@dgcolelaw.com                     sej4barr@aol.com

---

[9] Essentially, this could be accomplished by vacating those portions of the Award beginning with the second full paragraph on page 5 of the Interim Decision through the end.

9

CERTIFICATE OF SERVICE

I hereby certified that on March 3, 2008, I electronically filed **Vermilion Coal Company's Response To Black Beauty Coal Company's, Objection to Magistrate Bernthal's Report and Recommendation Dated January 30, 2008**, with the Clerk of the Court using CM/ECF System which will send notifications of such filing to the following:

Jean M. Blanton
Ziemer, Stayman, Weitzel & Shoulders, LLP
20 NW First Street, P.O. Box 916
Evansville, Indiana 47706-0916
E-Mail: jblanton@zsws.com

/s/ Deborah G. Cole
ARDC No. 6184806