UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| **VERMILION COAL COMPANY,** | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 07-2082 |
| **BLACK BEAUTY COAL COMPANY,** | )<br>)<br>) |
| Defendant. | )<br>) |

**OPINION**

This matter is before the court on Plaintiff Vermilion Coal Company's Motion to Vacate in Part Arbitration Award (#7) and Defendant Black Beauty Coal Company's Motion to Dismiss Vermilion's Complaint to Vacate in Part Arbitration Award and Vermilion's Motion to Vacate in Part Arbitration Award (#14). For the reasons that follow, Vermilion's Motion to Vacate In Part Arbitration Award is DENIED and Black Beauty's Motion to Dismiss is denied as MOOT.

BACKGROUND

Vermilion Coal Company (Vermilion) and Black Beauty Coal Company (Black Beauty) are parties to a coal mining lease. Pursuant to the lease, Vermilion leases certain lands and coal mining rights located in Vermilion County, Illinois to Black Beauty. The original lease was entered into between Laswell Coal Company and Vermilion. An amended lease (Lease) was later negotiated and executed. This Lease was initially assigned to Catlin Coal Company and later assigned to Black Beauty in 1999. Pursuant to the Lease, Black Beauty was to pay as rent five percent of Black

Beauty's gross sales to Vermilion. Black Beauty was further required to pay wheelage[1] fees to Vermilion. The Lease further provides that "any sales tax and/or severance" tax can be deducted in determining the gross sales and wheelage.

In 2002, a dispute arose between Vermilion and Black Beauty regarding whether the Black Lung Excise Tax (BLET) and the Abandoned Mine Land Fee (AMLF) are "severance taxes" pursuant to the Lease and thus subject to deduction in royalty and wheelage calculations. This dispute led to Vermilion filing suit in the Vermilion County Circuit Court. The Vermilion County Circuit Court stayed the litigation and referred the matter to arbitration pursuant to the terms of the Lease. The arbitration panel consisted of an umpire arbitrator (UA), one arbitrator selected by Vermilion, and one arbitrator selected by Black Beauty (party arbitrators). The parties submitted cross motions for summary judgment on the issue of the deductibility of the BLET and AMLF. The arbitration panel heard argument on the motions, but reserved ruling on them. The UA requested extrinsic evidence on the issues of intent and customs and practices in the coal mining industry regarding BLET and AMLF. As a result, Vermilion retained experts and conducted depositions on these issues. The parties were later asked to identify the issues for the arbitration panel. On August 24, 2004, the arbitration panel issued its order regarding the issues to be arbitrated at the November 8, 2004, hearing. The arbitration panel bifurcated from this hearing the issue of remedies for any breach.

The hearing proceeded for two weeks. On March 28, 2005, the arbitration panel issued its decision and award. Both party arbitrators filed dissents with the decision of the UA controlling.

---

[1] Wheelage involves payment by Black Beauty to Vemilion for transporting or shipping coal from property not owned by Vermilion through or under the leased property.

In the decision, the UA determined that the BLET and AMLF were not "severance taxes" using the plain meaning of the words and were thus not deductible pursuant to the terms of the Lease. The UA went on to address Vermilion's claims for breach of contract, fraud and anticipatory repudiation. The UA stated that "none of the facts, actions or events constitutes fraud nor a repudiation based on applicable Illinois law nor do Black Beauty nor Catlin's deduction of BLET and AMLF constitute such a material breach as to constitute a repudiation of the lease." The UA further found that the "evidence in this case falls far too short to establish a total breach of the lease." Vermilion and Black Beauty then entered into negotiations relating to payment of the previously deducted BLET and AMLF. As a result of these negotiations, Black Beauty paid to Vermilion $372,329.44. In June 2006, Vermilion voluntarily dismissed the issues it reserved in arbitration and filed a Motion for Costs and Attorney Fees. Black Beauty filed a Cross Motion for Costs. On January 31, 2007, the arbitration panel issued its Final Decision and Award granting Vermilion $308,955.01 in costs. Both of the party arbitrators again filed dissents with the UA's decision controlling.

## ANALYSIS

Pursuant to the Federal Arbitration Act, the following are grounds for this court to set aside an arbitration award:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any

  party have been prejudiced; or

  (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).[2]  Courts will also set aside awards that are in "manifest disregard of the law," although the Seventh Circuit has interpreted this language so narrowly that it is confined to cases in which arbitrators "'direct the parties to violate the law.'" Wise v. Wachovia Secs., LLC, 450 F.3d 265, 267 (7th Cir. 2006), quoting George Watts & Son, Inc. v. Tiffany & Co., 248 F.3d 577, 580 (7th Cir. 2001).  The Seventh Circuit has stated that "[j]udicial review of arbitration awards is tightly limited; perhaps it ought not be called 'review' at all." Baravati v. Josephthal, Lyon & Ross, Inc., 28 F.3d 704, 706 (7th Cir. 1994).  While "[i]t is tempting to think that courts are engaged in judicial review of arbitration awards under the Federal Arbitration Act, . . . they are not." Wise, 450 F.3d at 269.  "When parties agree to arbitrate their disputes they opt out of the court system, and when one of them challenges the resulting arbitration award he perforce does so not on the ground that the arbitrators made a mistake . . . ." Wise, 450 F.3d at 269.  "That is why in the typical arbitration . . . the issue for the court is not whether the contract interpretation is incorrect or even wacky but whether the arbitrators had failed to interpret the contract at all." Wise, 450 F.3d at 269.  The court will uphold the decision of the arbitrator unless "'there is no possible interpretive route to it, so a non-contractual basis can be inferred.'" Prostyakov v. Masco Corp., 513 F.3d 716, 723 (7th Cir. 2008), quoting Cuna Mut. Ins. Soc'y v. Office & Prof'l Employees Int'l Union, Local 39, 443 F.3d 556, 562 (7th Cir. 2006).

---

[2] Vermilion does not bring its complaint pursuant to 9 U.S.C. § 11 which governs modification or correction of an arbitration award.

Vermilion sets forth two bases for its assertion that the decision of the arbitration panel should be vacated: (1) the UA exceeded his powers under applicable federal and state law and (2) the UA refused to hear evidence material to the controversy.[3]

Vermilion first argues that the UA exceeded his powers under applicable federal and state law. Vermilion initially asserts that the UA erred in his application of Illinois law because Illinois law required a finding of breach, a finding that Black Beauty repudiated the Lease, and that Black Beauty's actions constituted fraud. Vermilion also asserts that it was error pursuant to the terms of the Lease for the UA to find in favor of Black Beauty on Vermilion's claims of breach of contract, fraud, and anticipatory repudiation after finding that Black Beauty was not entitled to deduct the BLET and AMLF from royalty and wheelage calculations.

The UA stated the basis for his denial of these claims at length, basing his decision on both Illinois and federal law. In deciding these claims the UA stated, *inter alia*, as follows:

> Applying the Restatement guideline standards in determining whether the contract was repudiated, the evidence in this case falls far too short to establish a total breach of the lease. While the conduct of deductions of taxes was premised on a good faith misunderstanding and belief that the taxes were deductible can be remedied by adequately compensating the lessor monetarily,

---

[3] Vermilion also asserts in its complaint and its Motion to Vacate In Part Arbitration Award that the UA exhibited evident partiality. However, in its subsequently filed Memorandum In Support of Motion to Vacate Arbitration Award, In Part, (#16) Vermilion makes no mention of this argument. Therefore, this court assumes Vermilion has abandoned this claim. Even if Vermilion had not abandoned the claim, this court finds no evidence in the record to support Vermilion's assertion of evident partiality on the part of the UA. This is particularly true in light of the fact that the UA awarded Vermilion a total of $681,284.45, comprised of $372,329.44 in back wheelage and royalty payments and $308,955.01 in costs.

it cannot under the circumstances of the case, end the contractual obligation. As the parties so prudently provided for an arbitration process to resolve disputes of the kind that spawned the problem here, it now has been resolved by the contract interpretation here and the lease should proceed in furtherance of its objectives subject, of course, to a consideration of monetary compensation.

Illinois law with its own cases and their embracing noteworthy authorities including the Restatement compels the analysis here rejecting the claim of repudiation as that evidence having been viewed in its entirety has not established that the breach was so central to the parties' agreement that it defeated the essential purpose of the lease contract.

. . .

There is no evidence upon which anyone can assign bad faith to Ron Laswell as he jumpstarted the coal mining operation under the lease from Vermilion in 1994. For five years until the assignment to Black Beauty from his Catlin Company, Laswell and Catlin deducted BLET and AMFL in the royalty computation. Laswell and Catlin had a good faith belief that they were deductible taxes. That's an issue in this case. Vermilion made it an issue. Thereafter, from 1999 until August 2002, and until the present time, Black Beauty continued to deduct BLET and AMFL the same way that Laswell did, the same way that the lessee before the assignment did. During this total period of eight years, Vermilion never objected nor raised a question until August 2002. The evidence does not support the deception or fraud allegation of Vermilion.

> While the determination by this arbitration forum has interpreted the word "severance" favorably for Vermilion and the deduction now constitutes a breach for monetary compensation, the deductions were not fraudulent nor did they constitute a breach of such level to be a repudiation. The deductions in the computation did not constitute a total breach.

Vermilion's arguments that the UA's decision was not in accordance with Illinois law is not convincing. It is clear that the UA applied Illinois law. Whether that application is correct is not for this court to decide. In a situation where the arbitrator "conscientiously attempt[s] to apply Illinois law, pursuant to the choice of law provision in the contract, but fail[s] to apply it correctly," "[t]he loser has no judicial remedy . . . because it is merely a case of legal error, not of *ultra vires*, and there is no judicial review of arbitration awards for legal error." BEM I, LLC v. Anthropologie, Inc., 301 F.3d 548, 555 (7th Cir. 2002).

Vermilion's argument that the arbitrator "flouted the plain and unambiguous language" of the Lease is no more availing. In interpreting the Lease, the arbitrator stated as follows:

> Vermilion ties into the repudiation claim Sec. 22.1 of the lease relating to Notice of Default and seeks to achieve a lease termination based on a notice of default to Black Beauty. Additionally Vermilion seeks a default determination for Black Beauty's failing to agree and accept Vermilion's interpretation of the lease word "severance."
>
> . . .
>
> The dispute over the meaning of the word "severance" as a deduction should have gone to arbitration for clarification before the notice was sent out. The parties had a bona fide dispute and this lease should not be construed to permit the party who

loses a good faith dispute to lose all. It has already been determined that a repudiation did not occur. Accordingly, it was not an event of default, and the notice and demand was untimely. It can become timely if the lessee fails to comply with this arbitration decision.

The following clause in the Lease supports the arbitrator's interpretation:

It is the intention of both parties to successfully promote and operate an underground coal mine to remove and sell the coal encompassed in this agreement. To that end, both parties agree to cooperate with each other and that each owes to the other a duty of good faith dealing.

Thus, it is apparent from a review of the arbitrator's decision that he did not fail to interpret the contract. Rather, Vermilion would have this court find that the arbitrator's interpretation was incorrect, something this court cannot do under the FAA. See Wise, 450 F.3d at 269.

In support of its assertion that this court can review the decision of the arbitrator, Vermilion relies on Anheuser-Busch, Inc. v. Local Union No. 744, Affiliated with the Int'l Bhd. of Teamsters, 280 F.3d 1133 (7th Cir. 2002). However, in a subsequent decision, the Seventh Circuit indicated that Anheuser-Busch does not stand for the proposition that the court's interpretation of the plain meaning of a contract can displace that of the arbitrator. See Int'l Union of Operating Eng'rs, Local 319, v. J.H. Findorff & Son, Inc., 393 F.3d 742, 747 (7th Cir. 2004). Rather, "misinterpretation of contractual language, no matter how 'clear,' is within the arbitrator's powers; only a decision to ignore or supersede language conceded to be binding allows a court to vacate the award." J.H. Findorff, 393 F.3d at 745. Accordingly, this court concludes that it cannot review the arbitrator's decision based upon Vermilion's assertion that the arbitrator exceeded his powers.

Vermilion next argues that the decision of the arbitrator should be vacated because the arbitrator refused to hear evidence material to the controversy. In support of this argument, Vermilion states that in July of 2004, the parties were asked to identify the issues for arbitration. In its subsequent order identifying the issues to be heard at the arbitration hearing in November 2004, the arbitration panel indicated that a hearing on the remedies for any breach of the Lease would be bifurcated. Vermilion contends that, as a result, it "presented little or no evidence or argument on the bifurcated issues of remedies for any breach of the lease including accounting, damages or termination." Vermilion states it "intended to, and would have, submitted testimony on the bifurcated issues that it had invested more than $20 million in the leased property, and that several hundred older investors relied upon the income derived from royalties for retirement income."

This court has reviewed the record and finds no basis for Vermilion's assertion that the arbitrator prevented the introduction of material evidence. Rather, the arbitration panel merely bifurcated the proceedings, proceeding first on the issue of liability. The arbitration panel determined during the liability portion of the proceedings that while Black Beauty should not have deducted the BLET/AMLF from royalty and wheelage calculations, this action did not constitute a material breach of the Lease. Accordingly, there was no reason for the arbitration panel to proceed on the issue of damages for breach of the Lease. In addition, the record does not indicate that anything prevented Vermilion from presenting evidence it believed was relevant to the liability portion of the proceedings. Furthermore, the "arbitrator is not bound to hear all of the evidence tendered by the parties," but must "give each of the parties to the dispute an opportunity to present its evidence and arguments." Guo v. Citibank Global Markets, 2007 WL 3286696 at *4 (S. D. Ind.

2007), quoting <u>Generica Ltd. v. Pharmaceutical Basics, Inc</u>., 125 F.3d 1123, 1130 (7th Cir. 1997). The court concludes that the arbitration panel did provide Vermilion an opportunity to present its evidence and arguments. Accordingly, Vermilion has failed to establish an adequate basis for this court to vacate the arbitration award.

Because this court has concluded that Vermilion is not entitled to the relief it seeks in this matter, this court need not reach the merits of Black Beauty's Motion to Dismiss (#14). Accordingly, the Motion to Dismiss is denied as MOOT.

IT IS THEREFORE ORDERED:

(1) Vermilion's Motion to Vacate In Part Arbitration Award [7] is DENIED

(2) Black Beauty's Motion to Dismiss [14] is denied as MOOT.

(3) This case is terminated.

ENTERED this 13th day of March, 2008

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE